UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
KENNETH H.,

                Plaintiff,        <u>DECISION AND ORDER</u>
                                     1:21-cv-07570-GRJ

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
-------------------------------------------------------

GARY R. JONES, United States Magistrate Judge:

    In October of 2019, Plaintiff Kenneth H.[1] applied for Supplemental Security Income benefits under the Social Security Act. The Commissioner of Social Security denied the application. Plaintiff, represented by the Law Offices of Kenneth Hiller, PLLC, Justin M. Goldstein, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 21).

    This case was referred to the undersigned on August 18, 2022. The parties submitted a Joint Stipulation in lieu of motions for judgment on the

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

pleadings. (Docket No. 24).  For the following reasons, Plaintiff's is granted judgment on the pleadings and this matter is remanded for further proceedings.

## I.  BACKGROUND

### A.  *Administrative Proceedings*

Plaintiff applied for benefits on October 22, 2019, alleging disability beginning October 1, 2018. (T at 230-42).[2]  Plaintiff's application was denied initially and on reconsideration.  He requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on January 14, 2021, before ALJ Michael Stacchini. (T at 56). Plaintiff appeared with an attorney and testified. (T at 63-82). The ALJ also received testimony from Barry Murphy, a vocational expert. (T at 83-86).

### B.  *ALJ's Decision*

On January 29, 2021, the ALJ issued a decision denying the application for benefits. (T at 22-40).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since October 22, 2019 (the application date). (T at 27).  The ALJ concluded that Plaintiff's mild congestive heart failure, obesity, asthma, sleep apnea, osteoarthritis of the knee, PTSD, intermittent explosive disorder, antisocial personality disorder,

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 16.

seizure disorder, and polysubstance abuse were severe impairments as defined under the Act. (T at 27).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 27-28).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 416.967(b), with the following limitations: he can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; have occasional exposure to atmospheric conditions; is precluded from exposure to unprotected heights/hazardous machinery; is able to understand, remember and carry out simple routine tasks with regularly scheduled breaks at two hour intervals; can perform decision making and tolerate changes in work setting related to simple routine repetitive tasks, with brief and superficial interaction with the general public and occasional interaction with coworkers and supervisors, but without tandem tasks. (T at 30).

The ALJ found that Plaintiff could not perform his past relevant work as a development counselor. (T at 34). However, considering Plaintiff's age (51 on the application date), education (at least high school), work

experience, and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 34).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between October 22, 2019 (the application date) and January 29, 2021 (the date of the ALJ's decision). (T at 35-36).  On July 14, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-6).

    C.    *Procedural History*

Plaintiff commenced this action, by and through his counsel, by filing a Complaint on September 10, 2021. (Docket No. 1).  On August 16, 2022, the parties, through counsel, submitted a Joint Stipulation in lieu of motions for judgment on the pleadings. (Docket No. 24).

## II.  APPLICABLE LAW

    A.    *Standard of Review*

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the

Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

## B.   Five-Step Sequential Evaluation Process

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
>
> 4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

> 5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

See *Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises three main arguments in support of his request for reversal of the ALJ's decision.  First, he challenges the ALJ's Listings analysis.  Second, Plaintiff argues that the ALJ's consideration of the medical opinion evidence was flawed, which undermines the RFC determination.  Third, Plaintiff challenges the ALJ's assessment of his physical limitations.

This Court will not reach the merits of these arguments, as it finds a remand for further development of the record is necessary for proper consideration of Plaintiff's claim for benefits.

### A. Development of the Record Regarding Mental Impairments

Social Security proceedings are non-adversarial and the ALJ is obliged "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 147 L. Ed. 2d 80, 120 S. Ct. 2080 (2000) (citation omitted).

This obligation applies even if the claimant is represented by counsel. *See, e.g., Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)(citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)).

The ALJ's duty to develop the record has been described as a "bedrock principle of Social Security law." *Batista v. Barnhart*, 326 F.Supp.2d 345, 353 (E.D.N.Y.2004)(citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir.1999)).

In the present case, the nature and extent of Plaintiff's mental impairments was central to the assessment of his claim for benefits. The ALJ found that Plaintiff's PTSD, intermittent explosive disorder, and antisocial personality disorder were severe impairments. (T at 27). The

ALJ concluded, however, that Plaintiff's mental impairments did not satisfy any of the Listings. (T at 28-29).

Further, while the ALJ assessed some limitation in Plaintiff's ability to perform the mental demands of basic work activity (*i.e.*, the ALJ found Plaintiff limited to simple routine tasks, brief and superficial interaction with the public, only occasional interaction with coworkers and supervisors, with no tandem tasks), the ALJ nevertheless found that Plaintiff could cope with the stress demands of maintaining a work schedule and routine. (T at 30).

The ALJ's assessment of Plaintiff's mental limitations was based on his review of the treatment record, consideration of Plaintiff's activities of daily living, and assessment of the medical opinion evidence. (T at 29-34).

The record contained two (2) assessments from non-examining State Agency review physicians. In February of 2020, Dr. E. Gagan opined that Plaintiff had mild limitation in his ability to understand, remember, or apply information; moderate limitation in interacting with others; mild limitation as to maintaining concentration, persistence, or pace; and moderate limitation in the ability to adapt or manage himself. (T at 93-94). Dr. Gagan stated that Plaintiff could remember and carry out instructions and maintain attention, concentration, and pace, provided he was in a work setting with no more than superficial contact with others. (T at 93). Dr. Gagan

assessed moderate limitation in Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors; get along with co-workers; and be aware of normal hazards and take appropriate precautions. (T at 98). Dr. Stockton, another State Agency review physician, affirmed Dr. Gagan's findings in September of 2020. (T at 108-09, 114).

The ALJ considered these opinions persuasive, finding them consistent with the "mental status examinations, conservative treatment, intact relationships and independent activities of daily living." (T at 33).

The record also contained two (2) consultative evaluations regarding Plaintiff's mental impairments. Dr. Glenn Bromley performed an evaluation in December of 2019. Dr. Bromely described Plaintiff as cooperative and demonstrating restrictive affect and dysthymic mood, mild impairment in memory, below average intellectual functioning, and fair to poor insight and judgment. (T at 381-82).

Dr. Bromley opined that Plaintiff had no evidence of limitation in his ability to sustain concentration, perform a task at a consistent pace, maintain personal hygiene and appropriate attire, or in his awareness of normal hazards and/or the need to take appropriate precautions. (T at 382). He assessed mild limitation in Plaintiff's ability to understand, remember, or

apply simple directions and moderate limitation in his ability to use reason and judgment to make work-related decisions and interact adequately with supervisors, co-workers, and the public. (T at 382).

Dr. Bromley assessed marked limitation in Plaintiff's ability to understand, remember, or apply complex directions or instructions; sustain an ordinary routine and regular attendance; and regulate his emotions, control his behavior, and maintain well-being. (T at 382). He opined that Plaintiff's problems "may significantly interfere with [his] ability to function in a daily basis." (T at 382).

Dr. Melissa Antiaris performed a psychiatric evaluation in September of 2020. She described Plaintiff as cooperative, with appropriate affect and euthymic mood, and demonstrating mild impairment in attention and concentration, mild impairment in memory, below average cognitive functioning, and fair insight and judgment. (T at 543). Dr. Antiaris assessed no limitation in Plaintiff's ability to understand, remember, and apply simple instructions; use reason and judgment to make work-related decisions; or interact adequately with supervisors, co-workers, and the public. (T at 543-44). She found no limitation in Plaintiff's ability to sustain concentration and perform a task at a consistent pace and mild limitation with respect to sustaining an ordinary routine and regular attendance at work. (T at 544).

Dr. Antiaris opined that Plaintiff had marked limitation in his ability to regulate his emotions, control his behavior, and maintain well-being. (T at 544). She explained that Plaintiff's problems "may significantly interfere with [his] ability to function in a daily basis." (T at 544).

The ALJ found the opinions of Dr. Bromley and Dr. Antiaris generally persuasive but did not accept the marked limitations the consultative examiners assessed. (T at 33-34). The ALJ found the marked limitations "not supported by or consistent with the benign examination findings or the activities of daily living, which included self-care, cooking, cleaning, using public transportation, good family relationships, part time work while getting along with customers, coworker and supervisors and hobbies." (T at 34).

As is evident, the ALJ's reconciliation of the conflicting aspects of the medical opinion evidence turned in large part on his interpretation of the treatment notes and in particular the mental status examination findings and descriptions of Plaintiff's activities contained therein. (T at 33).

While the treatment record is extensive (T at 474-511, 574-1167, 1169-1508), the administrative record does not include an assessment of Plaintiff's work-related limitations from one of Plaintiff's treating mental health providers.

Courts in the Southern District of New York have consistently recognized that "an ALJ has a heightened duty to develop the record when a claimant asserts a mental impairment." *Gabrielsen v. Colvin*, No. 12-CV-5694 (KMK)(PED), 2015 U.S. Dist. LEXIS 99806, at *11 (S.D.N.Y. July 30, 2015)(collecting cases).  "This 'heightened duty' derives from the fact that a claimant's mental illness may greatly impede an evaluator's assessment of a claimant's ability to function in the workplace, thus necessitating a more thorough review." *Piscope v. Colvin*, 201 F. Supp. 3d 456, 462-63 (S.D.N.Y. 2016).

Underpinning the heightening of the ALJ's duty is a recognition that the records and opinions of treating providers are particularly probative in claims involving mental health.  *See Flynn v. Comm'r of SSA*, 729 F. App'x 119, 122 (2d Cir. 2018)("The treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as [x-rays] or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations."); *see also Marinez v. Comm'r of Soc. Sec.*, 269 F. Supp. 3d 207, 216 (S.D.N.Y. 2017) (noting that treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a

unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations.") (citing 20 C.F.R. § 416.927(c)(2)).

In the present case, given the conflicting assessments of the examining and non-examining physicians, and considering the extensive evidence of mental impairment (which the ALJ recognized by finding that Plaintiff had severe mental impairments and limitation in his ability to perform the mental demands of basic work activity), the Court finds that the ALJ erred by failing to seek an assessment from one or more of Plaintiff's treating mental health providers. A remand is required for this purpose.[3]

B. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal

---

[3] On remand, the ALJ should also reconsider the medical opinion evidence regarding Plaintiff's physical impairments, particularly in light of a treatment note and x-ray findings from November of 2020, which post-dated the consultative physical examinations and arguably suggested greater physical limitation.

14

standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also* *Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS 180514, at *28 (S.D.N.Y. Nov. 6, 2014).

Here, the Court concludes that a remand is necessary for further development of the record and reconsideration of the evidence for the reasons discussed above.

## IV.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, Plaintiff is GRANTED Judgment on the Pleadings, and this matter is REMANDED for further proceedings consistent with this Decision and Order. The Clerk is directed to enter final judgment consistent with this decision and then close the file.

Dated: October 11, 2022                     *s/Gary R. Jones*
                                            GARY R. JONES
                                            United States Magistrate Judge